Lee A. Cirsch (SBN 227668)
Lee.Cirsch@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Francis J. Flynn, Jr. (SBN 304712)
Law Office of Francis J. Flynn, Jr.
6220 West Third Street, #115
Los Angeles, California 90036
francisflynn@gmail.com
Telephone: (323) 424-4194

Attorneys for Plaintiff
Julian Metter

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN METTER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:16-cv-06652-RS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: March 16, 2017<br>Time: 1:30 p.m.<br>Ctrm: 3<br><br>Judge: Richard Seeborg<br>Action Filed: November 16, 2016 |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. No Arbitration Agreement Was Ever Formed .......... 2

1. An Arbitration Agreement Cannot Form If the Plaintiff Did Not Consent to It .......... 2

2. Browse-Wrap Arbitration Agreements Are Rarely Enforced Against Consumers, Such as Plaintiff .......... 3

3. The Court Should Follow *Meyer*, Which Addressed the Same Issue .......... 4

4. Metter Did Not Have Reasonably Conspicuous Notice of the Terms And Conditions And Did Not Consent to Them .......... 7

(a) The Hyperlink To Terms and Conditions Was Blocked On the Screen Of Plaintiff's Phone .......... 7

(b) The Placement of the Hyperlink Minimizes Notice to Users .......... 8

(c) The Language Referencing the User Agreement Is Not Clear .......... 9

5. Uber's Authorities Are Inapposite .......... 10

B. The Issue Of Arbitrability Is For the Court, Not an Arbitrator, To Decide. .......... 11

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

### *FEDERAL CASES*

*AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ..................................2, 11
*Aviles v. Quik Pick Express, LLC*, 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015)............ .12
*Be In, Inc. v. Google Inc.*, 2013 WL 5568706 (N.D.Cal. Oct. 9, 2013)............................ 3, 4
*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015)............................................ 4, 6
*Cullinane v. Uber Techs., Inc.*, 2016 WL 3751652 (D. Mass. July 11, 2016) ..................... 10
*First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995) ................................................ 12
*Fteja v. Facebook, Inc.*, 841 F .Supp. 2d 829 (S.D.N.Y. 2012)........................................... 4
*Goldman Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) .................................. 3
*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ...................................... 3
*Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009)................................... 8
*In re Zappos.com, Inc., Customer Data Breach Sec. Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)........................................................................ 8
*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014)........................................... 5
*Lainer v. Uber Techs., Inc.*, No. 2:15-cv-09925-BRO-MRW (C.D. Cal. May 11, 2016).........................................................................10, 11
*Meyer v. Kalanick*, __ F. 3d __, 2016 WL 4073012 (S.D.N.Y. July 29, 2016) ........... *passim*
*Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015) ............................ 11
*Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir. 2016) .......................................... 11
*Moody v. Metal Supermarket Franchising Am., Inc.*, 2014 WL 988811 (N.D.Cal. Mar. 10, 2014)…………………………………………………………………………..12
*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)....................................3, 5, 6
*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) .................................................. 5
*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980)....................... 8
*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ............................... 2

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006) ........................................ 12
*Register.com v. Verio Inc.*, 356 F.3d 393 (2nd Cir. 2004) .................................................... 3
*Savetsky v. Pre-Paid Legal Services*, 2015 WL 604767 (N.D. Cal. 2015) ............................ 9
*Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir.2016) .............................................. 9
*Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d. Cir. 2002) ..................... *passim*
*Swift v. Zynga Game Network, Inc*. 805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................... 5
*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) ........................................................................................................ 8
*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. Dec. 27, 2014) ........................ 12
*Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468 (1989) ............................................................. 2

### *State Cases*

*Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565 (2013) ..................................................... 10
*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199 (2006) ..................................................... 2
*Long v. Provide Commerce Inc.*, 245 Cal. App. 4th 855 (2016)....................................3, 5, 6
*Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004) ................................. 10

## I. INTRODUCTION

Defendant Uber Technologies, Inc.'s motion to compel arbitration hinges largely on its argument that this case is identical to *Cordas v. Uber Technologies, Inc.*, Case No 3:16-cv-04065 RS, in which this Court compelled arbitration. But in briefing the *Cordas* motion, the parties did not address – and this Court, therefore, did not apply – on-point authority. Specifically, in *Meyer v. Kalanick*, __ F. 3d __, 2016 WL 4073012 (S.D.N.Y. July 29, 2016), Judge Rakoff denied a motion to compel arbitration based on facts identical to those at issue here.[1] Applying California law to the same user interface, the Southern District of New York concluded that because the hyperlink to the "Terms of Service & Privacy Policy" was in very small font, and indeed barely legible, Uber failed to establish "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms." *Id.*, at *6. The Court should simply follow *Meyer* and deny Uber's motion.

Although *Meyer* is dispositive, the case against compelling arbitration is even stronger here because unlike in *Cordas*, the plaintiff here has submitted a comprehensive declaration stating that he would not have seen the hyperlink during the registration process. Specifically, when plaintiff reached the payment screen and started entering his credit card information, a numbered keypad would have popped up on the screen, *covering up the hyperlink to the terms of service*. Accordingly, Uber did not even afford plaintiff an opportunity to see, let alone click on, the hyperlink leading to the terms and conditions. This is in stark contrast with the fairly conclusory declaration submitted in *Cordas*, where the plaintiff did not connect the discussion of the technical settings on his phone with what he actually saw (or rather did not see) when registering with Uber. It is well-settled that upon a motion to compel arbitration the Court must apply a standard of review used in motions for summary judgment. Plaintiff's declaration here, at the very least, presents a material issue of fact.

[1] Both Plaintiff Metter and *Meyer* registered for Uber with Samsung Galaxy phones with Android operating systems, and within days apart of each other in October, 2014. *See* Declaration of Julian Metter, ¶2; Declaration of Tony Cosentini, ¶5; *Meyer*, 2016 WL 4073012 at *4. By contrast, *Cordas* had an iphone with an iOS operating system. The Uber registration screens on the Android operating systems are starkly different to that of the iOS operating systems. *Compare* Declaration of Tony Cosentini, Exh. A *with* Declaration of Christopher Brauchli, Exh. A filed in *Cordas* (Doc. 27-1).

Moreover, even aside from *Meyer* and Plaintiff's declaration, the barely legible hyperlink did not provide plaintiff with sufficient notice that he was giving up his constitutional right to a jury trial. As an initial matter, the hyperlink appears at the very bottom of the phone screen, below the "Register" button and below the Pay Pal and Google Wallet buttons, where the user would have no reason to look during the registration process. Further, compared to the easily visible text pertaining to payment information, the key phrase "[b]y creating an Uber account you agree to," which is the only indication to app users that they may be giving up some of their rights, is in a tiny font that would not be legible on most phone screens. Finally, the phrase "Terms of Service & Privacy Policy" is confusing because it suggests a description of how consumers may use the Uber app, not a forfeiture of a right to a jury trial.

In sum, just as in *Meyer*, the Court should deny Uber's motion.

## II. ARGUMENT

### A. No Arbitration Agreement Was Ever Formed

#### 1. An Arbitration Agreement Cannot Form If the Plaintiff Did Not Consent to It

"Arbitration under the [Federal Arbitration Act] is a matter of consent." *Volt Info. Scis. v. Bd. of Trs*., 489 U.S. 468, 479 (1989). The FAA "make[s] arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404, n.12 (1967). "The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate." *Volt Info. Scis*., 489 U.S. at 478; *see also AT&T Techs. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986) ("A party cannot be required to submit to arbitration any dispute which he has no agreement to so submit."). "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." *Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 208 (2006).

While there is a policy preference in favor of enforcing arbitration agreements, this preference does *not* apply to the threshold question of formation— whether the parties reached

an agreement. *See Goldman Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) ("If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply.") Indeed, the presumption in favor of arbitration only applies after a court finds an "express agreement to arbitrate [that] was validly formed." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010).

### 2. Browse-Wrap Arbitration Agreements Are Rarely Enforced Against Consumers, Such as Plaintiff

Applying California law, the Second Circuit held that "conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers" is "essential if electronic bargaining is to have integrity and credibility." *Specht v. Netscape Communications Corp*., 306 F.3d 17, 35 (2d Cir. 2002). "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com v. Verio Inc*., 356 F.3d 393, 403 (2d Cir. 2004) (applying California law). "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Long v. Provide Commerce Inc*., 245 Cal. App. 4th 855, 867 (2016) (quoting *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1179 (9th Cir. 2014)). "Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id*.

Before turning to the enforceability of Uber's arbitration agreement, it is important to distinguish between two types of electronic agreements: "click-wrap" and "browse-wrap." "'Clickwrap' agreements require users to actively click a radio button, checkbox, or hyperlink in order to unambiguously manifest the user's assent to the terms of the agreement." *Be In, Inc. v. Google Inc*., 2013 WL 5568706, *6 n.4 (N.D.Cal. Oct. 9, 2013). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id*., at *6. "[C]ourts presented with facts tending to show that the reasonably prudent offeree would be unaware of the browsewrap terms generally refuse to

find an enforceable agreement." *Id.*, at *7 (citations omitted). "[T]he cases in which courts have enforced browsewrap agreements have involved users who are businesses rather than ... consumers." *Fteja v. Facebook, Inc*., 841 F .Supp. 2d 829, 836 (S.D.N.Y. 2012); *see also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 396 (E.D.N.Y. 2015); ("[C]ourts generally have enforced browsewrap terms only against knowledgeable accessors, such as corporations, not against individuals.");

It is undisputed that Uber's agreement is a browse-wrap because the user is not required to accept the "Terms of Service & Privacy Policy," including the arbitration clause, separately. Because "the user can continue to use the [app] or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists" (*Be In, Inc*., 2013 WL 5568706, *6), Uber's agreement plainly falls into the browse-wrap category, which means that it must meet a higher standard to be enforceable than click-wrap contracts.

### 3. The Court Should Follow *Meyer*, Which Addressed the Same Issue

In its motion to compel arbitration, Uber glancingly mentions in a footnote the case that set forth the applicable standard and, applying that standard, refused to enforce Uber's arbitration clause. Notably, neither the Court nor the parties cited this case in *Cordas*.

In *Meyer v. Kalanick*, __ F. Supp. 3d __, 2016 WL 4073012 (S.D.N.Y. July 29, 2016) (Rakoff, J.), the court considered the *same* registration process for the Uber app as here. Applying California law, the Court denied Uber's motion to compel arbitration because the plaintiff never agreed to arbitrate his disputes with the company, and thus no arbitration agreement ever formed. The court reviewed the motion under the standard that the Second Circuit, also applying California law, set out in in *Specht v. Netscape Communications Corp*., 306 F.3d 17, 35 (2d Cir. 2002): a motion to compel arbitration will be denied unless there is "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms." *Id*., at *6.

Because, as here, the plaintiff in *Meyer* was not aware of the hyperlink to the terms and conditions page, the court concluded that there was no basis for Uber's claim that he had actual knowledge of the agreement. *Id*. The court also found that he did not have constructive

knowledge because as here, "the notification was in a font that was barely legible on the smartphone device that a would-be Uber registrant could be expected to use." *Id.* Applying *Specht*, *Meyer* then concluded that Uber's Terms of Service were unenforceable, because "the Terms of Service hyperlink's placement, color, size and other qualities relative to the Uber app registration screen's overall design is simply too inconspicuous to meet the *Specht* standard." *Id.*, at *9.

The Ninth Circuit and California courts cite *Specht* favorably. *See, e.g.*, *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 569 (9th Cir. 2014); *Nguyen*, 763 F.3d at 1173 (citing same standard); *Long*, 245 Cal. App. 4th at 864-65 (2015); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) (citing *Specht* under Washington contract law). Indeed, *Meyer* is consistent with numerous courts that refused to enforce terms and conditions contained in browse-wrap agreements.[2]

In *Long*, for example, the California Court of Appeal refused to enforce a company's terms of use, despite the fact that a link to the terms was technically visible on the website's check-out page. *Long*, 245 Cal. App. 4th at 865. Although the link was present on the page, the court held that it was not sufficiently conspicuous. *Id.* at 865-66. While the company contended that the link was "next to the fields and buttons a consumer must interact with to complete his order," in fact, to find the link, a consumer would need to look "below the buttons he must click to proceed with the order," "even further below a 'VeriSign Secured' logo and notification," and "still further below a thick dark green bar with a hyperlink for 'SITE FEEDBACK.'" *Id.* at 866. Therefore, even though "no scrolling [was] required" to find the link, the court held that the link was "simply too inconspicuous" given the link's "placement, color, size and other qualities relative to the . . . website's overall design," *Id.*, at 865. The court reasoned that "[t]hough it may be that an especially observant Internet consumer could spot the Terms of Use hyperlinks . . . that quality alone cannot be all that is

[2] Citing *Swift v. Zynga Game Network, Inc*. 805 F. Supp. 2d 904, 906 (N.D. Cal. 2011), Uber argues that *Meyer* is contrary to California law. But *Swift* involved a **click-wrap agreement** where the user had to affirmatively consent to the company's terms of service. As explained above, browse-wrap agreements, such as Uber's, are subject to the higher *Specht* standard. Indeed, *Swift* distinguishes *Specht* on that very basis. *Id.*, at 911.

required to establish the existence of an enforceable browsewrap agreement." *Id.*

Similarly, in *Nguyen* the court concluded the plaintiff's act of ordering a product online did not constitute an act of assent to be bound by the browse-wrap agreement, because "proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice" 763 F.3d at 1178. The Ninth Circuit explained that even if a website makes terms of use available on every page of the website, but does not otherwise provide notice to users or prompt them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on, without more, is insufficient to give rise to constructive notice. *Id.* at 1178-79. The court concluded "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id.*, at 1179.

Similarly, in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 402 (E.D.N.Y. 2015) the court held that even a hyperlink that was directly above the sign-in button—and stated that clicking the button would constitute acceptance of the terms—was insufficient to constitute conspicuous notice. Though the company had linked to the terms of service, the "design and content of the website" ensured that the link was not "readily and obviously" available. *Id.* at 404. This was because the sign-in button was conspicuous, appearing in all caps, in a clearly delineated box in two corners of the homepage. *Id.* By contrast, the notice of the existence of terms of service was in small font, and was neither in "all caps" nor "bold." *Id.* Thus, the company's small-print notice of terms was "obscured by the physical manifestation of assent, in this case clicking the 'SIGN IN' button." *Id.* In other words, the website did not ensure that the notice attracted the user's attention.

Here, Uber did nothing to attract users' attention to the hyperlink leading to the terms and conditions. To the contrary, Uber rendered the hyperlink hard to read and placed it where few people would look for it. *See* Metter Decl., ¶¶3, 5. Under these circumstances, the Court should apply *Meyer*, *Nguyen*, *Long*, *Berkson*, and other cases involving browse-wrap agreements, and deny Uber's motion to compel arbitration.

**4. Metter Did Not Have Reasonably Conspicuous Notice of the Terms And Conditions And Did Not Consent to Them**

**(a) The Hyperlink To The Terms and Conditions Was Blocked On the Screen Of Plaintiff's Phone**

One factor that is dispositive of Uber's motion is that where the courts enforced browse-wrap agreement, the hyperlink to the terms and conditions, at the very least, appeared on the screen, giving the user an opportunity to review them before registering for the service or buying the product. In stark contrast, here, the hyperlink did not appear on the plaintiff's screen; instead, it was blocked when he was entering his payment information.

Specifically, as stated in his concurrently submitted declaration, when plaintiff reached the payment screen and started entering his credit card information a numbered keypad would have popped up on the screen, *covering up the hyperlink to the terms of service*.[3] Declaration of Julian Metter, ¶5. Indeed, the keypad would have blocked the entire bottom of the screen below the "Register" button. *Id*. Accordingly, there was nothing on the registration screen to so much as suggest to plaintiff that there was a hyperlink to the "Terms of Service & Privacy Policy." Without any indication by Uber during the registration process that plaintiff was entering into a binding contract which included an arbitration agreement, Uber cannot credibly argue that it provided a "reasonably conspicuous" notice of the "Terms of Service & Privacy Policy," as required by *Meyer* and *Specht*. And, because he did not have any notice of the terms and conditions, plaintiff could not have consented to them.

It is important to note that this situation presents an even stronger case against arbitrability than either *Meyer* or *Cordas*. In *Meyer*, the plaintiff did not argue that there was no visible hyperlink on his screen when he was signing up for Uber. In *Cordas*, the plaintiff presented a declaration listing the technical specifications of his phone, but did not state what he actually saw on his phone screen during the sign-up process. Here, however, plaintiff has submitted a declaration that states affirmatively that there was no hyperlink on his phone

[3] Plaintiff also notes that the screenshots in Mr. Tony Cosentini's declaration are significantly larger than the screen of his phone and thus do not represent the actual size of the text "which [was] much smaller and less apparent." Metter Decl., ¶4.

screen when he was signing up for Uber because it was blocked by the keypad and that he was not aware that he was purportedly consenting to Uber's "Terms of Service & Privacy Policy." This alone, at a minimum, creates a "genuine issue of fact concerning the formation of the agreement," which in turn requires denial of Uber's motion. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co*., 925 F.2d 1136, 1141 (9th Cir. 1991) (*quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 (3d Cir. 1980)).

**(b) The Placement of the Hyperlink Minimizes Notice to Users**

The hyperlink to the terms and conditions is located on the bottom of the payment screen, where customers registering with Uber provide their credit card information. All the pertinent text and links, such as the boxes where the information is entered, is at the top of the screen. The "Terms of Service & Privacy Policy" hyperlink is below the "Register" button, as well as the buttons for the customers who wish to use PayPal or Google Wallet as payment options. Not only is the terms of service hyperlink in a location where few people would notice it, but it is also – as the court noted in *Meyer* – in a tiny, barely readable font. Nothing on the screen alerts the user that merely by clicking "Register" that they would purportedly be giving up their right to sue in court. Indeed, there is no reason for a user to look at the bottom of the screen if they are only entering information on the top of the screen. The situation, therefore, is similar to that in *Hines v. Overstock.com, Inc*., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) *aff'd*, 380 Fed.Appx. 22 (2d Cir.2010), which held that an online retail store did not provide adequate notice when the website did not prompt customer to review the site's "Terms and Conditions" and the link to the terms was not prominently displayed.[4]

Accordingly, Uber did not provide adequate notice to plaintiff of the "Terms of Service & Privacy Policy." *In re Zappos.com, Inc., Customer Data Breach Sec. Litig*., 893 F. Supp. 2d 1058, 1064–65 (D. Nev. 2012) (finding browse-wrap agreement unenforceable where the hyperlink to "terms of use" is "inconspicuous, buried in the middle to bottom of

[4] Notably, Uber re-designed its "Terms of Service" document in 2016 to make the arbitration clause much more prominent. Declaration of Lee Cirsch, ¶ 2. This change suggests that Uber realized that it was vulnerable to challenges from users when seeking to compel arbitration.

every [defendant] webpage among many other links. . ."); *cf. Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir.2016) (a court "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)."

**(c) The Language Referencing the User Agreement Is Not Clear**

Nothing in the language that Uber uses in its hyperlink suggests to, let alone informs, users that registering for Uber would constitute an agreement to waive their right to try their claims in court. Instead, Uber uses a generic phrase "By creating an Uber account, you agree to the Terms of Service & Privacy Policy." To a reasonable user the phrase "terms of service" would likely mean conditions under which he or she may use the Uber app. Such terms may include, for instance, an agreement to use only one's own credit card, or to not engage in confrontations with drivers, or to not damage their vehicles. Nothing in the phrase "terms of service" – or for that matter, "privacy policy" – would give reason to consumers to suspect that they are giving up any of their legal rights through the mere act of registering for a ride-sharing app.[5] Accordingly, even if plaintiff saw the language at issue (and he did not), then the language did not inform him that he was entering into a binding legal agreement with Uber or that the terms of service would include an arbitration provision.

Because the phrase "terms of service and privacy policy" does not put a user on notice that by registering for Uber's service he or she would be giving up the constitutional right to a jury, the Court should deny Uber's motion to compel arbitration. *See, e.g.*, *Savetsky v. Pre-Paid Legal Services*, 2015 WL 604767, *4-5 (N.D. Cal. 2015) (refusing to enforce an arbitration clause in a browse-wrap agreement, where the user could access the relevant clause only by clicking on links generically titled "more plan details" and "member contract" with no

[5] *See Meyer*, 2016 WL 4073071 at *9 ("Further still, the wording of Uber's hyperlink adds to the relative obscurity of Uber's User Agreement. The Court cannot simply assume that the reasonable (non-lawyer) smartphone user is aware of the likely contents of "Terms of Service," especially when that phrase is placed directly alongside "Privacy Policy." … The reasonable user might be forgiven for assuming that "Terms of Service" refers to a description of the types of services that Uber intends to provide, not to a user's waiver of his constitutional right to a jury trial or his right to pursue legal redress in court should Uber violate the law.")

reference to arbitration). *Cf. Nyulassy v. Lockheed Martin Corp*., 120 Cal. App. 4th 1267, 1281 (2004) ("The component of surprise arises when the challenged terms are hidden in a prolix printed form drafted by the party seeking to enforce them.") (internal quotation marks omitted).

**5. Uber's Authorities Are Inapposite**

Uber relies heavily on *Cullinane v. Uber Techs., Inc*., 2016 WL 3751652 (D. Mass. July 11, 2016). As an initial matter, Cullinane applied Massachusetts law. Under Massachusetts law, "online consumer agreements will be enforced provided they have been reasonably communicated and accepted and, if considering all of the circumstances, it is reasonable to enforce the provision at issue." *Id*., *5 (*quoting Ajemian v. Yahoo!, Inc*., 83 Mass. App. Ct. 565, 573-74 (2013)). This is nowhere near the stringency of the California law standard, as stated in *Specht* and applied in *Meyer*. The Massachusetts standard of "reasonable communicat[ion]" of a provision falls short of California law's "reasonable conspicuousness" standard. And a mere "acceptance" standard is nowhere near the stringent "unambiguous manifestation of assent" applied in *Meyer*.

Further, even setting aside the different standards, *Cullinane* is distinguishable on its facts. As *Meyer* explained, in *Cullinane*, where the plaintiff had an iPhone with iOS operating system, the hyperlink to the terms and conditions "was clearly delineated, and the words appeared in bold white lettering on a black background, in a size similar to, if not larger than, the size of the 'Done' button that users clicked in order to register." 2016 WL 4073012, *7. Here, as in *Meyer*, both where Android operating systems were utilized, "the phrase 'Terms of Service & Privacy Policy' is much smaller and more obscure, both in absolute terms and relative to the 'Register' button." *Id.*

Uber also cites *Lainer v. Uber Techs., Inc*., No. 2:15-cv-09925-BRO-MRW (C.D. Cal. May 11, 2016), ECF No. 25, but that unpublished order is inapposite. In *Lainer*, the plaintiff conceded that a valid arbitration agreement between her and Uber existed, but contended that her dispute with Uber fell outside of the scope of the arbitration agreement. That is obviously not the case here. Further, in *Lainer* the plaintiff did not provide evidence, as Plaintiff does

here, that the link to the arbitration clause was covered up by the pop-up keypad on the smartphone. Indeed, the placement and legibility of the hyperlink to the "Terms of Service & Privacy Policy," which is the key concern here, was not an issue in *Lainer* at all.

Uber also relies on the Ninth Circuit's decision in *Mohamed v. Uber Techs., Inc*., 836 F.3d 1102 (9th Cir. 2016) which held that Uber drivers were required to arbitrate their claims against the company. That case, however, is easily distinguishable. Unlike its customers, Uber drivers could not access the Uber app without clicking a button marked "Yes, I Agree" beneath the phrase "By clicking below, you acknowledge that you agree to all the contracts above" with those contracts hyperlinked above. *Mohamed v. Uber Techs., Inc*., 109 F. Supp. 3d 1185, 1190-91 (N.D. Cal. 2015). The driver was then required to click "Yes, I agree" on a screen containing text stating "Please confirm that you have reviewed all the documents and agree to all the new contracts." *Id*. But, as explained above, because Uber utilizes a browse-wrap agreement, the customer only needs to sign up for the service to be bound by the arbitration clause. In other words, Uber treats the mere agreement to use the service as consent to a forfeiture of the customer's constitutional right to a jury. This is a far cry from requiring affirmative consent to the pertinent contracts (which needed to be expressed twice) as in *Mohamed*. Moreover, unlike in *Mohamed*, the hyperlink to the terms and conditions page here is barely legible. Indeed, *Meyer* distinguished *Mohamed* on these grounds. 2016 WL 4073012, *7 ("plaintiff Meyer did not have to click any button explicitly indicating assent to Uber's User Agreement, and the hyperlink to Uber's 'Terms of Service' was nowhere near as prominent as in *Mohamed*.") [6]

**B. The Issue Of Arbitrability Is For the Court, Not an Arbitrator, To Decide.**

Uber argues that the arbitrator, not the Court, should decide the gateway issue of arbitrability. The default rule, however, is that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *see*

[6] The other driver arbitration cases that Uber cites are distinguishable on the same basis.

*also First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). Even in cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," as Uber argues, the Court may consider whether the assertion of arbitrability is "wholly groundless." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

Here, as explained above, because the hyperlink was barely visible and was, in fact, blocked by Plaintiff's keypad while he was entering his financial information, Uber's assertion of arbitrability is groundless. Thus, for example in *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *10-13 (N.D. Cal. Dec. 27, 2014), the court did not enforce a delegation clause in a browse-wrap agreement because it held that the parties had not entered into an arbitration agreement at all. Importantly, *Tompkins* drew a distinction between browse-wrap with consumers versus those with sophisticated entities. The court explained that "there is good reason not to extend this doctrine from commercial contracts between sophisticated parties.... Indeed, the Supreme Court held that by default, courts should decide arbitrability because the question of 'who (primarily) should decide arbitrability' is "rather arcane," and '[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.'" *Id.*, at *11 (citation omitted). The "clear and unmistakable" test thus established a "heightened standard" to evince delegation. *Id.* (citation omitted). *See also Aviles v. Quik Pick Express, LLC*, 2015 WL 9810998, at *6 (C.D. Cal. Dec. 3, 2015) (declining to apply a delegation clause where the plaintiff executed agreement at the defendant's office without the benefit of counsel, and the parties dispute the plaintiff's English language competency); *Moody v. Metal Supermarket Franchising Am., Inc.*, 2014 WL 988811, *11 (N.D.Cal. Mar. 10, 2014) (determining that a reference to the "then current commercial arbitration rules of the AAA" was insufficient evidence of "clear and unmistakable" intent to delegate arbitrability, contrasting the contract's language with an express delegation provision that directly quotes Rule 7.) Here, because Plaintiff is not a sophisticated commercial entity, but rather an ordinary consumer, under the heightened standard the delegation clause is invalid.

## III. CONCLUSION

For the foregoing reasons, the Court should apply *Meyer* and deny Uber's motion.

Dated:February 14, 2017

Respectfully submitted,

CAPSTONE LAW APC

LEE A. CIRSCH
ROBERT K. FRIEDL
TRISHA K. MONESI

LAW OFFICE OF FRANCIS J. FLYNN, JR.

FRANCIS J. FLYNN, JR.

By: */s/ Lee A. Cirsch*
LEE A. CIRSCH

Attorneys for Plaintiff JULIAN METTER