1    WILLIAM L. STERN (BAR NO. 96105)
     WStern@mofo.com
2    TIFFANY CHEUNG (BAR NO. 211497)
     TCheung@mofo.com
3    CLAUDIA M. VETESI (BAR NO. 233485)
     CVetesi@mofo.com
4    LUCIA X. ROIBAL (BAR NO. 306721)
     LRoibal@mofo.com
5    MORRISON & FOERSTER LLP
     425 Market Street
6    San Francisco, CA  94105-2482
     Telephone:  415.268.7000
7    Facsimile:  415.268.7522

8    Attorneys for Defendant
     UBER TECHNOLOGIES, INC.
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   JULIAN METTER, individually and on behalf     Case No. 3:16-cv-06652-RS
     of a class of similarly situated individuals,
14                                                  **DEFENDANT'S NOTICE OF MOTION**
                     Plaintiff,                     **AND MOTION FOR LEAVE TO FILE A**
15                                                  **MOTION FOR RECONSIDERATION OF**
            v.                                      **APRIL 17, 2017 ORDER; SUPPORTING**
16                                                  **MEMORANDUM OF POINTS AND**
     UBER TECHNOLOGIES, INC.,                       **AUTHORITIES**
17
                     Defendant.                     **NO HEARING DATE SET PURSUANT**
18                                                  **TO LOCAL RULE 7-9(D)**

19                                                  Hon. Richard Seeborg, Courtroom 3

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION ........................................................................... 1

STATEMENT OF THE ISSUES ................................................................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ....................................................................................... 2

III.    ARGUMENT .................................................................................................... 2

        A.     Reason No. 1:  A "Material Difference" in Fact Exists (L.R. 7-9(b)(1). ................ 3

              1.     The Court Erroneously Found That The Alert Would Have Been Obscured Once Mr. Metter Began Entering His Registration Information and Remained Obscured Throughout. .................................... 3

              2.     There Is No Support for the Court's Finding That the Alert Would Have Remained Obscured Throughout the Registration Process. ............. 3

              3.     The Court's Finding Is Wrong. ................................................................. 3

              4.     Uber Could Not Have Anticipated the Court's Erroneous Finding. ........... 5

              5.     The Court Created a Special "Call Out" Rule for Arbitration Agreements Alone, Which Is Preempted by the FAA. .............................. 5

        B.     Reason No. 2:  "Manifest Failure" by the Court to Consider a Dispositive Legal Argument (L.R. 7-9(b)(3). ............................................................... 8

IV.    CONCLUSION ................................................................................................ 8

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3

NOTICE IS HEREBY GIVEN that Uber Technologies, Inc. ("Uber") moves this Court,

4

pursuant to Northern District of California Local Rule 7-9, for leave to file a motion for

5

reconsideration of the Court's April 17, 2017 "Order Denying Defendant Uber's Motion to

6

Compel Arbitration," Dkt. No. 39.  This Motion is based on this Notice of Motion and Motion,

7

the supporting Memorandum of Points and Authorities, the Declaration of Tony Cosentini,

8

materials on file with this Court in this action, and such other written or oral argument as may be

9

presented at or before the time this Motion is taken under submission by the Court.

10

Pursuant to Civil Local Rule 7-9(d), no response to this motion need be filed and no

11

hearing held unless ordered by the Court.  Accordingly, no notice of a hearing date is given.

12

By this Motion, Uber requests leave to file this Notice of Motion and Motion for

13

Reconsideration of April 17, 2017 Order, pursuant to Local Rule 7-9.

14

15

Dated: May 5, 2017

WILLIAM L. STERN
TIFFANY CHEUNG

16

CLAUDIA M. VETESI
LUCIA X. ROIBAL

17

MORRISON & FOERSTER LLP

18

19

By:   /s/ *William L. Stern*
WILLIAM L. STERN

20

21

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

22

23

24

25

26

27

28

**STATEMENT OF THE ISSUES**

1.   Is leave for reconsideration of the April 17, 2017 Order warranted where the Court reached its decision by relying, in part, on a factual finding that the parties did not argue and, in fact, is not true because, contrary to the Court's decision, when Mr. Metter reached the payment screen as part of Uber's registration process, he had an opportunity to see the "alert"—a message on his mobile device that says "BY CREATING AN UBER ACCOUNT, YOU AGREE TO THE TERMS OF SERVICE & PRIVACY POLICY"—*before* entering his credit card information (without scrolling down), *while* entering his credit card information (without scrolling down), and *after* entering his credit card information but before selecting the REGISTER button (again, without scrolling down)?

2.   Given the Court's finding of a genuine issue of fact concerning Mr. Metter's assent, is leave for reconsideration of the April 17, 2017 Order warranted by "[a] manifest failure by the Court to consider [a] dispositive legal argument," i.e., whether Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) requires trial on the issue of assent, rather than outright denial of the motion?

## I.     INTRODUCTION

Local Rule 7-9(b) recognizes that reconsideration may be granted in three circumstances. Two arise here.  Either circumstance warrants this Court granting leave for reconsideration of its April 17, 2017 Order, Dkt. No. 39.

**First**, there is "a material difference in fact" from what "was presented to the Court." Specifically, the Court found that when Mr. Metter registered as an Uber rider, the "alert"—a message on his mobile device that said "BY CREATING AN UBER ACCOUNT, YOU AGREE TO THE **TERMS OF SERVICE & PRIVACY POLICY**"—would have been obscured as soon as "Metter tapped any of the numerical information fields on the screen," and would have remained obscured "for as long as Metter entered numerical information … until Metter pressed 'REGISTER.'"  (Order, 2:15-3:2.)  The factual record, however, did not support this finding and, in fact, the finding is incorrect.

The evidence showed (and the Court found) that the alert would have been immediately visible when Mr. Metter reached the payment screen, and it would have remained visible until Mr. Metter tapped one of the fields, thereby engaging the keypad.  Even with the keypad engaged, Mr. Metter could have scrolled down to see the alert at any time before he clicked the "REGISTER" button.  Neither party submitted evidence suggesting that the link would have remained obscured "until Metter pressed 'REGISTER,'" as this Court found.

In fact, that is not true.  While entering his credit card information, Mr. Metter could click a standard button on his mobile device to disengage the keypad, making the alert visible again without having to scroll.  Moreover, after entering his credit card information and clicking the "NEXT" button on the keypad (signified by an arrow or checkmark icon), the keypad would have disengaged, and the alert would have been visible yet again without having to scroll.  The Court should grant reconsideration to correct its mistaken factual finding and the legal conclusion that followed from that finding.

**Second**, there is "[a] manifest failure by the Court to consider" a "dispositive legal argument."  The Court concluded that "Metter has raised a genuine issue of fact concerning his notice of, and assent to, Uber's terms of service."  (Order, 7:10-11.)  Given that finding, the

1    Federal Arbitration Act mandates what must happen next:  "If the making of the arbitration

2    agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall

3    proceed summarily to the trial thereof. "  9 U.S.C. § 4.  Instead, the Court denied Uber's motion.

4    Thus, if the Court is not inclined to grant Uber's motion to compel arbitration even after

5    correcting the factual record (per the first argument above) then, at a minimum, the Court should

6    grant reconsideration to revise its order to reflect that "the parties shall proceed summarily to [a]

7    trial" on assent, as required by the FAA.

8            For all the foregoing reasons, this Court should grant Uber's motion for leave and allow

9    for reconsideration of its April 17, 2017 Order.

10   ## II.      LEGAL STANDARD

11           Civil Local Rule 7–9 permits a party to move for reconsideration of any interlocutory

12   order upon receiving leave from the Court.  Under the Rule, to bring such a motion, the moving

13   party must show: (1) "[t]hat at the time of the motion for leave, a material difference in fact or

14   law exists from that which was presented to the Court before entry of the interlocutory order for

15   which reconsideration is sought"; (2) "[t]he emergence of new material facts or a change of law

16   occurring after the time of such order"; or (3) "[a] manifest failure by the Court to consider

17   material facts or dispositive legal arguments which were presented to the Court before such

18   interlocutory order."  Civ. L.R. 7–9(b).  *Rodriguez v. Barrita, Inc.*, No. C 09–04057 RS, 2012

19   WL 2308069, at *1 (N.D. Cal. June 18, 2012); *see also Kane v. Chobani, Inc.*, No. 12-cv-02424-

20   LHK, 2013 WL 5529723 (N.D. Cal. July 25, 2013) (granting leave to file motion for

21   reconsideration based in part on defendant's contention that the court's decision relied on a fact

22   plaintiff did not allege).  Quite apart from Rule 7-9, "[c]ourts have inherent power to modify their

23   interlocutory orders before entering a final judgment."  *Balla v. Idaho State Bd. of Corr.*, 869

24   F.2d 461, 465 (9th Cir. 1989).

25   ## III.     ARGUMENT

26           The Court should grant reconsideration of its Order for two reasons.

27

28

**A.    Reason No. 1:  A "Material Difference" in Fact Exists (L.R. 7-9(b)(1).**

**1.    The Court Erroneously Found That The Alert Would Have Been Obscured Once Mr. Metter Began Entering His Registration Information and Remained Obscured Throughout.**

The Court found, correctly, that the "the terms of service alert would have been visible to Metter when he first reached the payment and registration screen."  (*Id.*, 6:12-13.) Notwithstanding, the Court held that Uber failed to meet its burden of showing assent to the Terms of Service because the alert would have been obscured by the keypad "immediately when Metter tapped any of the numerical information fields on the screen," and that it would have remained obscured "for as long as Metter entered numerical information … until Metter pressed 'REGISTER.'"  (Order, 2:15-3:2.)  The evidence does not support that finding.  Moreover, it is contrary to the true facts.

**2.    There Is No Support for the Court's Finding That the Alert Would Have Remained Obscured Throughout the Registration Process.**

Mr. Metter's testimony cannot support the Court's finding.  He testified that (i) the keypad "would have" blocked the alert while he entered his information during that phase of his registration, and (ii) he did "not recall viewing … the blocked portion of the screen in order to click the 'Register' button and complete the registration process."  (Declaration of Julian Metter, ¶ 5 (Dkt. No. 29-2).)

As for Uber's evidence, the Court correctly found that (i) Mr. Metter would have seen the alert at the outset (Order, 6:12-13), (ii) "the alert's font, size, color, and placement … render it sufficiently conspicuous," and (iii) "the alert references and links to a term of service agreement that contains a valid arbitration provision."  (*Id.*, 5:15-21.)

There is no evidence to support the Court's finding that the alert would have remained obscured until Mr. Metter pressed the "REGISTER" button.  The Court assumed that as fact.

**3.    The Court's Finding Is Wrong.**

The Court's finding is contrary to the facts in at least four ways.

**First**, as the Court acknowledges, Mr. Metter could have scrolled down to see the alert at any time during the registration process, even when the keypad was engaged.  (Order, 6:5-6.)

1    Thus, nothing prevented Mr. Metter from seeing the alert throughout the registration process.

2    (*Cf.* Order, 2:15-3:2.)

3    **Second**, after the keypad was engaged, Mr. Metter could have pressed a standard button

4    on his Android device at any point during the registration to disengage the keypad and make the

5    link visible—again, without scrolling.  That would have given Mr. Metter another opportunity to

6    view the alert *before* pressing the "REGISTER" button.

7    Here's how that works:  Mr. Metter's mobile device uses an Android operating system

8    with a standard button (here, a "triangle" icon) on the lower left hand corner of the screen that

9    allows a user to disengage the keyboard at any time.  (Declaration of Tony Cosentini in Support

10   of Uber's Motion for Reconsideration, ¶ 4(b); Ex. A.)  The triangle icon would have remained

11   engaged throughout the registration process.  (*Id.*, Exs. A-D.)  Had Mr. Metter clicked on the

12   triangle icon at any point during the registration process, the keypad would have disappeared and

13   the alert would once again have been visible without having to scroll down.  Moreover, that

14   triangle icon remained engaged throughout the registration process, such that at any stage Mr.

15   Metter could make the keypad disappear. (*Id.*)

16   **Third**, once Mr. Metter entered his credit card information and pressed the "NEXT"

17   button on the keypad (signified by an arrow or checkmark icon), the keypad would have

18   disengaged, making the link visible, again, with no scrolling required.  That would have provided

19   Mr. Metter with yet another opportunity to view the alert *before* pressing the "REGISTER"

20   button.

21   The arrow function works this way:  When the keypad first appeared, Mr. Metter would

22   have seen an arrow in the lower right corner of the keypad.  (*Id.*, ¶ 4(c); Ex. B.)  By using the

23   arrow key, Mr. Metter could jump from one field to the next (i.e., from credit card number to

24   expiration date).  Once he reached the last field—the zip code—a check mark would have

25   appeared in place of the arrow on the number pad.  (*Id.*, Ex. C.)  Had he clicked this check mark,

26   the keypad would have disappeared and the alert would once again have been visible without

27   having to scroll down.  Mr. Metter would have thus, again, seen the screen showing the alert *after*

28   he entered his payment information, but *before* he pressed the "REGISTER" button.  (*Id.*, Ex. C,

D.)

**Fourth**, an individual user's personalized Android operating system settings can affect the portion of the screen that is obscured by the keypad.  Under certain user settings, the alert would have remained visible on the screen *without* scrolling even while the keypad was engaged, throughout the entire registration process.  (*Id.*, ¶ 4(d).)  Moreover, an individual's hardware choices can also affect the portion of the screen that is obscured of the keypad, regardless of their personalized Android operating system setting.  For example, if an individual user connects a physical keyboard to their mobile device via Bluetooth, the keypad will not engage during the registration process.  (*Id.*)  Mr. Metter provided no information to this Court regarding his personalized Android operating system or hardware settings.

In sum, contrary to the Court's finding, Mr. Metter would have had the opportunity in any number of ways to see the alert before, while, and after entering his payment information.

### 4.     Uber Could Not Have Anticipated the Court's Erroneous Finding.

The Court's finding that the keypad obscured the alert throughout the entire registration process was material to this Court's holding.  Indeed, it was the key finding.  Uber could not have anticipated that the Court would reach this finding, as Mr. Metter did not present evidence to that effect.  *Kane v. Chobani, Inc.*, No. 12-cv-02424-LHK, 2013 WL 5529723 (N.D. Cal. July 25, 2013) (granting leave to file motion for reconsideration based in part on defendant's contention that the court's decision relied on a fact plaintiff did not allege).

### 5.     The Court Created a Special "Call Out" Rule for Arbitration Agreements Alone, Which Is Preempted by the FAA.

With that factual finding corrected (but even without it being corrected), the FAA and California law dictate that the Court nevertheless should have granted Uber's motion to compel. Having correctly found that Mr. Metter would have seen the alert at the start of the registration process (Order, 6:12-13), the Court should have stopped and ordered Mr. Metter to arbitration. Instead, the Court concluded that the "alert" had to be unobscured not only at the beginning but throughout the registration process.  In effect, the Court created a special "call out" rule applicable only to arbitration, which is preempted by the Federal Arbitration Act, 9 U.S.C. § 1 *et*

1   *seq.* ("FAA").  (And, as explained below, even the Court's special "call out" rule is satisfied in

2   this case because Mr. Metter would have had the opportunity to see the alert again at the end of

3   the process, *before* pressing the "REGISTER" button.)

4   　　　As the California Supreme Court has recently explained, a defendant is "under no

5   obligation to highlight the arbitration clause of its contract, nor was it required to specifically call

6   that clause to [Plaintiff's] attention." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914

7   (2015); *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1178, 1182 (N.D. Cal.

8   2013) (Tigar, J.) (holding arbitration clause enforceable though it appeared under the heading

9   "Miscellaneous" on pages 49 and 50 of 217 pages); *see also Garcia v. Enter. Holdings, Inc.*, 78 F.

10  Supp. 3d 1125, 1137 (N.D. Cal. 2015) (Armstrong, J.) (in the context of online transactions, "the

11  terms of the agreement are binding, even if the user did not actually review the agreement,

12  provided that the user had actual knowledge of the agreement or the website put a 'reasonably

13  prudent user on notice of the terms of the contract.'"); *Knutson v. Sirius XM Radio Inc.*, No. 12–

14  CV–418, 2012 U.S. Dist. LEXIS 75698, at *10–11 (S.D. Cal. May 31, 2012) (upholding

15  arbitration provision in nine-page Customer Agreement that was included with lengthier

16  "Welcome Kit" mailed to plaintiff after he activated his satellite radio subscription); *see also*

17  *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1154 (9th Cir.2013) (observing in dicta

18  that arbitration provision was located on page 21 of a 31–page service agreement contained in a

19  larger bundle of documents called "Welcome Kit").

20  　　　The Court relied on *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir.

21  2014), finding that Uber's failure to call out the alert on the same screen in which Mr. Metter was

22  asked to click <u>REGISTER</u> "turns Uber's terms of service alert into something resembling an

23  unenforceable 'browsewrap agreement' because a registrant can purportedly agree to Uber's

24  terms of service without knowing he is doing so."  (Order, 7:2-4 (citing *Nguyen*, 763 F.3d at

25  1176).)  *Nguyen* does not support the Court's conclusion.  Rather, *Nguyen* teaches that in the

26  context of online agreements, mutual assent is satisfied when a website "user is required to

27  affirmatively acknowledge the agreement before proceeding with use of the website."  763 F.3d

28  at 1176.

1    That happened.  Even on the uncorrected facts, the Court found that Mr. Metter would

2    have seen the alert at the start of the registration process (Order, 6:12-13) and, shortly thereafter,

3    he manifested his assent by clicking the REGISTER button.  Nothing more is needed.

4    *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *8 (N.D.

5    Cal. June 25, 2014) is illustrative.  There, Judge Koh found that "the fact that the TOS were

6    hyperlinked and *not presented on the same screen* does not mean that customers lacked adequate

7    notice."  (Italics added.)  The Ninth Circuit affirmed, never mentioning the two screen issue.

8    *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016).  If a link had to be visible (read, not

9    obstructed) on the same screen, surely the Ninth Circuit could not have affirmed in *Tompkins*.

10    Finally, the Court should take into account the context of Mr. Metter's assent.  This was a

11    credit card transaction in which Mr. Metter was providing Uber his credit card information for

12    future use in connection with signing up for the Uber service.  "Any reasonably-active adult

13    consumer will almost certainly appreciate that by signing up for a particular service, he or she is

14    accepting the terms and conditions of the provider."  *Selden v. Airbnb, Inc.*, No. 16-CV-00933

15    (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016); *see also Schnabel v. Trilegiant Corp.*,

16    697 F.3d 110, 127 (2d Cir. 2012) (applying California law and emphasizing that presenting terms

17    to consumers at the time they enter credit card information to enroll in services places consumers

18    on notice that they are "employing such services subject to additional terms and conditions that

19    may one day affect [them]").  Just as in *Selden*, "the prevalence of online contracting in

20    contemporary society" supports the conclusion that Plaintiff "was on notice that he was entering

21    [into] a contract with [Uber] in this case."  *Id.*; *see also Cullinane v. Uber Techs., Inc.*, No. CV 14-

22    14750-DPW, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016) (finding that plaintiff assented to

23    arbitration agreement contained in Uber's Terms of Service by registering for an account and

24    observing that "[a] reasonable user who cared to pursue the issue would have inquiry notice of the

25    terms of the Agreement challenged by the plaintiffs."); *Lainer v. Uber Techs. Inc.*, No. 2:15-cv-

26    09925-BRO-MRW, Dkt. No. 25 (C.D. Cal. May 11, 2016) (enforcing arbitration agreement in

27    Uber's Terms of Service); *Via Viente Taiwan, L.P. v. United Parcel Serv., Inc.*, No. 4:08-CV-301,

28    2009 WL 398729, at *2 (E.D. Tex. Feb. 17, 2009).  This is hardly a novel principle of contract

1    law.  Over a century ago, the California Supreme Court held in *Taussig v. Bode & Haslett*, 134

2    Cal. 260, 265 (1901) that merely accepting a receipt in the context of this type of transaction

3    created a "duty of [the parties receiving the receipt] to take note of its contents."

4        For all the foregoing reasons, the Court should grant Uber's motion for reconsideration,

5    correct its factual findings, and grant Uber's motion to compel arbitration.

6    **B.     Reason No. 2:  "Manifest Failure" by the Court to Consider a Dispositive
         Legal Argument (L.R. 7-9(b)(3).**

7

8        Even if there were evidentiary support for the Court's finding that Mr. Metter's view of

9    the alert was obscured by the keypad throughout the registration process, reconsideration is still

10   warranted here because of the FAA's requirements:  "If the making of the arbitration agreement

11   or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed

12   summarily to the trial thereof." 9 U.S.C. § 4.

13       Here, the Court concluded that "Metter has raised a genuine issue of fact concerning his

14   notice of, and assent to, Uber's terms of service." (Order, 7:10-11.)  Section 4 of the FAA

15   prescribes what must happen next; the Court should have ordered the issue of assent to an

16   immediate mini-trial.  Instead, the Court denied Uber's motion.

17       Thus, if the Court is not inclined to grant Uber's motion to compel based on the first

18   argument set forth above, then at a minimum, the Court should grant reconsideration, revise its

19   Order, and order the parties to "proceed summarily to the trial" over the issue of Mr. Metter's

20   assent.

21   **IV.    CONCLUSION**

22       For all the foregoing reasons, this Court should grant Uber's motion for reconsideration of

23   its April 17, 2017 Order.

24

25

26

27

28

1

2

Dated: May 5, 2017                              WILLIAM L. STERN

3                                               TIFFANY CHEUNG
                                                CLAUDIA M. VETESI
4                                               LUCIA X. ROIBAL
                                                MORRISON & FOERSTER LLP
5

6
                                                By:    /s/ William L. Stern
7                                                      WILLIAM L. STERN

8                                               Attorneys for Defendant
                                                UBER TECHNOLOGIES, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28