UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE EPPS-STOWERS, et al.,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 16-cv-06652-RS

**ORDER GRANTING MOTION TO COMPEL ARBITRATION, FOLLOWING EVIDENTIARY HEARING**

## I. INTRODUCTION

Defendant Uber Technologies, Inc., operates what it first marketed as a "ride sharing" service, where persons seeking transportation could utilize Uber's application through the internet to find persons willing to drive them to their destinations. The service has become widely known, and now competes with traditional taxi cab services, in that Uber drivers are not typically simply looking to "share" rides, but to earn substantial income through their use of the Uber app. Customers likewise are usually looking for what a traditional taxi cab would provide, but with service level and price advantages.

Plaintiffs in this putative class action contend Uber wrongfully charges would-be riders cancellation fees under certain circumstances. Uber moved to compel arbitration as to the original named plaintiff, Julian Metter. Although the motion was initially denied, in light of direction from the Court of Appeal, it became apparent that Uber was entitled to a "mini trial" under section 4 of the Federal Arbitration Act to determine whether Metter consented to the purported arbitration

agreement. See 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

Metter subsequently withdrew from this action as a plaintiff before the evidentiary hearing went forward, due to health issues. The new named plaintiffs are Charlotte Epps-Stowers and Robert Verklas. Upon consideration of the evidentiary record presented at the hearing and in the briefing, the motion to compel arbitration will be granted.

## II. BACKGROUND

Uber contends Epps-Stowers and Verklas both effectively consented to the arbitration provision (1) when they signed up for Uber, and (2) when they continued using Uber after being sent an email with "updated" terms and conditions. The prior motion practice involving Metter did not include the second issue. As to the first issue, however, the prior order was explicit:

> [T]he registration process Metter went through when creating his Uber account is of paramount importance in deciding this motion. That process featured two screens. The first asked for Metter's name, email address, and phone number, along with a password for his new account . . . . The next screen sought his credit card number, expiration date, security code, and billing zip code. It also featured a large "REGISTER" button that allowed Metter to complete the registration process. At the bottom of the screen, the following alert was displayed: "BY CREATING AN UBER ACCOUNT, YOU AGREE TO THE TERMS OF SERVICE & PRIVACY POLICY." The bold, underlined portion of this alert is a clickable hyperlink to Uber's terms of service, which contain the arbitration provision Uber now seeks to invoke . . . .When Metter tapped any of the numerical information fields on this screen, like the "Credit Card Number" field, a keypad popped up allowing him to enter numerical information. The keypad would have remained activated for as long as Metter entered numerical information, and until Metter pressed "REGISTER" to complete the registration process. The keypad obstructed the previously visible terms of service alert . . . . Had Metter scrolled down on this page, the terms of service alert would have returned to view, even if the pop-up keypad remained activated . . . . Metter successfully registered for an account through this registration process.

Metter challenged assent to arbitration on four grounds: (1) the alert in the sign-up process he utilized was not sufficiently conspicuous to put him on notice he was agreeing to Uber's terms of service; (2) the alert was confusing and does not put registrants on notice that they are waiving jury trial rights; (3) the alert is an unenforceable "browsewrap" agreement; and (4) in any event, a pop-up keypad enabling Metter to enter his credit card information blocked the terms of service alert, preventing him from seeing it and thereby preventing him from assenting to the terms of service. The prior order concluded the first three arguments were unavailing, for reasons stated therein.[1]

The motion to compel arbitration was denied, and an evidentiary hearing was subsequently ordered, however, because there was at least a question of fact as to whether Metter's "declaration that he never saw the terms of service alert [was] credible and consistent with the functioning of the Uber app," given the issue that "the keypad obstruction is a fatal defect to the alert's functioning." While the substitution of Epps-Stowers and Verklas as plaintiffs may permit them to raise the additional issue of whether their use of Uber after it sent an email with revised terms of service constitutes consent, they have not presented grounds for reconsideration of the prior order that the only viable challenge to consent in the sign-up process would arise if they experienced the "keypad obstruction."

Epp-Stowers contends she signed up for Uber via her Android smartphone through the Uber mobile app. She does not dispute Uber's records showing that she signed up in April of 2014, and she agrees that the "screen shots" presented by Uber are substantially similar to what she saw. She contends, however, she never saw the terms of service hyperlink, and suggests the pop-up keyboard would have obscured it if she in fact signed up through the mobile app.

Uber offered evidence that Epps-Stowers signed up through get.uber.com, which it argues means she signed up on her desktop, not via her mobile phone. While it apparently would have

---

[1] To the extent that Epps-Stowers and Verklas are relying on the same arguments, they are rejected for the reasons explained in the prior order.

been possible that she used a browser on her phone, rather than the mobile app, Uber's testimony was that there would be no issue of a pop-up keyboard potentially obscuring the terms of service. Uber further offered testimony that even if Epps-Stowers signed up through m.uber.com, there still would have been no obscuring keyboard on the relevant date.

At the time of the motion briefing, there was a dispute as to whether Verklas signed up for Uber in 2014 or 2015, with conflicting evidence in the form of some billing records. Uber subsequently presented evidence that Verklas signed up under one email account and phone number in 2014, and another email account and phone number in 2015. Verklas contends he did not "sign up" anew in 2015, but merely purchased a new phone and "updated his Uber account with his new phone number and email address" after the "sales representative transferred his apps from his old phone to the new phone through the cloud."

In November 2016, Uber emailed all its riders. The subject of the email read: "We've Updated Our Terms of Use." The November 2016 email specifically stated that the updates "revise[] our arbitration agreement which explains how legal disputes are handled." It instructed riders to "read [the Terms of Service] fully," and provided a colored hyperlink to the Terms, explaining, "you can access [the Terms] here." Uber alerted riders that "[i]f you use our app or other services on or after that date, you're confirming you've read and agree to the updated Terms."

Uber offered evidence it sent the email to Epps-Stowers on November 16, 2016 and to Verklas on November 19, 2016. There is no dispute that Epps-Stowers and Verklas both used Uber numerous times after the email was sent. Plaintiffs contend, however, that they :

> both conducted thorough searches of their email history and have no record of a November 2016 email from Uber. Further, Plaintiffs' testimony shows that they never saw or opened an email from Uber regarding updates to Uber's Terms of Service. There is no legal support for the proposition that merely sending an email, with no evidence of receipt and which the recipient was not required to open or read, put Plaintiffs on actual or inquiry notice of Uber's Terms, to which they have never assented. Further, this case was filed prior to November 2016 and thus, the email could not have provided notice to Plaintiffs of an agreement to arbitrate.

## III. LEGAL STANDARD

Because Uber's terms of service are "a contract evidencing a transaction involving commerce," they are subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' . . . and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. § 4) (second omission in original). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

## IV. DISCUSSION

The original order denying the motion to compel arbitration as to Metter noted critical limits to the decision:

> This is not to say a litigant, like Metter, can defeat a motion to compel arbitration simply by claiming he never saw the terms of service alert. For instance, arbitration was proper in *Cordas*, where the plaintiff conclusorily claimed he never saw the terms of service alert, but did not affirmatively identify any particular reason he would not or could not have seen it. [*Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017)] ("Cordas raises no genuine dispute of any material fact, and it is proper to conclude, as a matter of law, that he was on notice of Uber's terms and conditions, and assented to them in signing up for Uber.").

1  Here, plaintiffs have not been limited to making allegations in motion practice, but have been heard in an evidentiary proceeding. Although plaintiffs cannot be faulted for lacking the ability to recall the details of their sign up process with precision, and are to be commended for what appears to have been forthright testimony, the preponderance of evidence supports Uber's contention that neither plaintiff signed up under circumstances implicating the "keypad obstruction" issue.

The evidence supports a conclusion that whether Epps-Stowers signed up on a computer or a phone, she did *not* do so through the mobile app. Additionally, Uber presented uncontradicted evidence that even the mobile app did not present the keypad obstruction issue at the time Epps-Stowers registered. Her testimony that she does not recall seeing the terms of service link is insufficient. *See, infra,* "This is not to say a litigant . . . can defeat a motion to compel arbitration simply by claiming [s]he never saw the terms of service alert."

The evidence regarding Verklas likewise supports a conclusion that he adequately expressed consent to the terms of service, including the arbitration provision. First, even assuming Verklas *only* signed up in 2014, Uber has presented sufficient evidence that the terms of service link would have been displayed to Verklas, without obstruction. Again, his testimony that he does not recall seeing it, however honest, does not support a different result. Furthermore, whether Verklas engaged in a new registration process in 2105 as opposed merely to "updating" his account, Uber's evidence demonstrates that he consented to the terms of service at that juncture, when there was no issue of keyboard obstruction.[2]

## V.  CONCLUSION

The motion to compel arbitration is granted. The action is hereby stayed pending

---

[2] In light of these conclusions, it is unnecessary to reach Uber's further argument that it can bind its users to arbitration by sending out emails to addresses it has on record, without any further evidence that the users actually received and opened those emails before continuing to utilize Uber's services.

CASE NO. 16-cv-06652-RS

6

completion of the arbitration proceedings. For administrative purposes, the Clerk is directed to close the file. Any party may move to reopen upon completion of the arbitration or for other good cause shown.

**IT IS SO ORDERED**.

Dated:  July 29, 2019

_____
RICHARD SEEBORG
United States District Judge

CASE NO. 16-cv-06652-RS

7